In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-2809

GEORGE OWENS,

*Petitioner-Appellant*,

*v.*

MATTHEW J. FRANK,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 C 492—**Patricia J. Gorence**, *Magistrate Judge*.

Argued February 17, 2004—DECIDED JANUARY 6, 2005

Before RIPPLE, KANNE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge*.   George Owens was convicted in a Wisconsin state court of first degree recklessly endangering safety while armed, a violation of Wisconsin Statutes §§ 941.30(1) and the former 939.63(1)(A)(3). After pursuing postconviction remedies in the Wisconsin state courts, Mr. Owens filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. Mr. Owens' petition was denied, and he ap-

pealed. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

George Owens' state conviction arose from an incident that occurred on March 18, 1997, involving his nephew, Maurice Owens. Mr. Owens and his son, George Owens, Jr., went to see Maurice Owens at a Milwaukee residence. After arriving, Mr. Owens began arguing with Maurice about an automobile. During the argument, Mr. Owens went back to his car to retrieve a shotgun. Maurice "ran into the house and slammed the door as Owens fired the shotgun at the front door. The shotgun pellets broke the glass of the screen door and splintered the door frame; some of the pellets went into the house, breaking portions of the drywall in the living room." R.8, Ex.D at 2.

Mr. Owens was arrested and charged on March 24, 1997. Maurice Owens testified at a preliminary hearing on April 1, 1997. Soon thereafter, on April 18, 1997, Mr. Owens made a demand for a speedy trial, and a trial was set for July 14, 1997. Maurice Owens, the victim in the incident, was not produced on the first trial date because the State had been unable to locate him. The trial then was rescheduled for August 20, 1997. However, the State still was unable to locate Maurice, and the trial was reset for October 29, 1997, over Mr. Owens' objection.

Prior to the October trial date, the State learned that Maurice had been the victim of an unrelated homicide. The State then requested that it be allowed to introduce Maurice

Owens' preliminary hearing testimony in his absence; the trial court granted the request.

The trial commenced on October 29, 1997, as scheduled. During the course of jury deliberations, the trial court advised counsel that the foreperson had sent the judge a note concerning one of the jurors. The note read: "As foreperson it has come to my attention that [Juror K] has withheld information regarding her boyfriend, who is currently on trial. She has made it clear to me in confidence that due to this situation she cannot be objective." R.8, Ex.D at 10 (alteration in original). The trial court addressed the issue by advising counsel that it would reconvene to address the issue after the jury rendered its verdict. The defense counsel requested permission to question the juror referenced in the note, Lavita King. Apparently, the court reserved ruling on the issue. *See* R.8, Ex.C at 19. Shortly thereafter, the jury returned a verdict of guilty.

After the verdict, the court discharged the jury and spoke with the foreperson. She advised the trial court that King "could not trust the police and appeared to have a bias against white officers" and that King "may not have answered truthfully questions regarding knowing the defendant, his family, having strong feelings that would be anti-police officers, and matters of that sort." R.8, Ex.D at 10. The foreperson also informed the judge that King, at one point during deliberations, placed her coat over her head and refused to deliberate.[1] R.8, Ex.C at 19.

On the date of Mr. Owens' sentencing, the court recounted its conversation with the foreperson. The record on appeal does not reveal any further requests on the part of Mr.

---

[1] She eventually did deliberate and, as noted above, the jury returned a guilty verdict.

Owens to procure information from the juror. In November, Mr. Owens was sentenced to nine years' imprisonment.

## B. State Court Proceedings

Mr. Owens appealed his conviction to the Court of Appeals of Wisconsin. He asserted "(1) that the trial court erred in admitting the victim's preliminary-examination testimony at trial; (2) that his counsel was ineffective because he failed to question adequately the victim at the preliminary examination;[2] (3) that his constitutional right to a speedy trial was violated; and (4) that his right to an impartial jury was violated." R.8, Ex.D, at 1-2.

The court first addressed Mr. Owens' contention that he was denied an opportunity to cross-examine sufficiently Maurice Owens at the preliminary hearing. The court determined that Mr. Owens conceded that the testimony fit within a firmly rooted hearsay exception; Mr. Owens only maintained that he was denied effective cross-examination. The court rejected this assertion by noting that the record revealed that "the trial court did not significantly limit Owens's cross-examination of his nephew." *Id.* at 4.

Turning to the alleged denial of a speedy trial, the Court explained that, under both the State and Federal Constitutions, "in determining whether a defendant has been denied his or her right to a speedy trial, a court must consider: (1) the length of the delay; (2) the reason for the delay . . .; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Id.* at 8 (citing *Doggett v. United States,* 505 U.S. 647, 651 (1992); *Barker v. Wingo,* 407 U.S. 514,

---

[2]  Mr. Owens does not raise this claim on appeal and it will not be discussed further.

530 (1972); *Day v. State,* 212 N.W.2d 489, 492-94 (Wis. 1973)). The court determined that the length of delay was a threshold question that required the court to find that the length was presumptively prejudicial before assessing the remaining factors. The court concluded that the seven-month delay was "relatively short" and "not so unreasonable as to be presumptively prejudicial." *Id.* at 9. Therefore, the court concluded, it need not consider the remaining factors.

Nevertheless, the court explained that, even if it were to consider the remaining factors, those considerations, taken together, did not support Mr. Owens' claim that he was denied a speedy trial. Although the court acknowledged that Mr. Owens had "consistently asserted his right to a speedy trial," *id.* at 9, the cause for the delay and its short length weighed heavily against Mr. Owens' claim. As to the final consideration, the court explained that the only prejudice Mr. Owens offered was that he was unable to cross-examine Maurice Owens at trial. The court found, however, that Maurice would have been similarly unavailable at the earlier trial dates. At any of the trial dates, Maurice Owens would not have been available to testify; therefore, there was no prejudice from the short delay and no denial of a speedy trial.

Finally, the court addressed Mr. Owens' claim regarding the denial of an impartial jury. The appellate court recounted the contents of the foreperson's note to the trial judge and the subsequent conversation between the foreperson and the judge. The court characterized Mr. Owens' contentions on this claim as presenting an "undeveloped argument." *Id.* at 10. It explained that whether a new trial was warranted depended on whether the juror incorrectly responded to a material question during voir dire and whether it was more probable than not that the juror was biased against Mr. Owens. The appellate court determined

that Mr. Owens had "not alleged any facts to establish that [King] was biased against him." *Id.* at 11. The court stated that the record only indicated that King "may have been biased in his favor because the foreperson indicated that the juror may have had a relationship with Owens"[3] and had a "bias against the white police officers who testified against [him]." *Id.* Further, the court held that Mr. Owens had not alleged any facts that indicated King provided extraneous prejudicial information to the jury. Concluding there was no evidence of bias against Mr. Owens, the court denied this claim and affirmed the conviction.

## C.  District Court Proceedings

After the Supreme Court of Wisconsin denied Mr. Owens' petition for review, he filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. The district court first addressed the speedy trial claim and explained that the Supreme Court has adopted a balancing test that weighs both the conduct of the prosecution and the defendant. To trigger this analysis, the court noted, "the accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." R.35 at 9 (citing *Doggett*, 505 U.S. at 651-52).

The court determined that the Wisconsin appellate court had applied the correct Supreme Court precedent; it was only necessary, therefore, to consider whether the Wisconsin decision involved an "unreasonable application" of that precedent, specifically, *Barker*, 407 U.S. 514. The court rejected Mr. Owens' assertion that the Wisconsin courts had

---

[3]  The Court of Appeals of Wisconsin apparently believed that the "Owens" with whom King had a relationship was Mr. Owens.

employed a bright-line rule for presumptive prejudice. The district court noted that the state court had relied upon applicable precedent of the Supreme Court of the United States in determining that the delay was not so unreasonable as to be presumptively prejudicial. The district court also held that the state court "went further than necessary" when it balanced the remaining *Barker* factors. R.35 at 11. This further assessment—one that also concluded Mr. Owens was not prejudiced by the delay—was not an unreasonable application of the *Barker* factors.

The district court next addressed Mr. Owens' Confrontation Clause claim. Mr. Owens had asserted that the Supreme Court of Wisconsin's decision in *State v. Dunn*, 359 N.W.2d 151 (Wis. 1984), "radically limited the scope and standards for preliminary examinations by limiting their scope to the plausibility of the witness's story," R.35 at 12 (citations omitted), and therefore that the testimony given during a preliminary examination did not satisfy the requirements of the Confrontation Clause. The district court applied the two-step test set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980), to determine whether a Confrontation Clause violation had occurred. According to *Roberts*, out-of-court statements can be admitted without offending a defendant's confrontation rights if (1) the witness was unavailable, and (2) the testimony had sufficient "indicia of reliability." R.35 at 14 (quoting *Roberts*, 448 U.S. at 65-66). *Roberts* held that reliability could be inferred if the evidence fits within a "firmly rooted hearsay exception" or otherwise is shown to have "particularized guarantees of trustworthiness." *Id.* at 14.

The district court found that, although the state court did not cite *Roberts*, but instead cited *State v. Bauer*, 325 N.W.2d 857 (Wis. 1982), the state court had applied the standard set forth in *Roberts*. Therefore, the district court only asked

whether the state decision was an unreasonable application of federal law. The state court held that the trial court did not significantly limit the cross-examination of Maurice, and the district court noted that George Owens did not explain in his habeas petition how his cross-examination was restricted significantly. The district court, therefore, denied relief.

Finally, the district court turned to Mr. Owens' claim that he was denied his right to an impartial jury. The court recounted the test for determining the impartiality of a juror and noted that due process only "requires 'a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.'" R.35 at 18 (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). The district court explained that Mr. Owens had not asserted that the state court's decision was contrary to or an unreasonable application of federal law; rather, Mr. Owens challenged the factual findings of the state court with affidavits containing factual information that never had been presented to the state courts. The court refused to permit Mr. Owens to rely on affidavits never before the state court to rebut the factual findings of the state court.

The district court then addressed the federal statutory provision for an evidentiary hearing. The district court explained that 28 U.S.C. § 2254(e)(2) sets forth the circumstances under which it could hold an evidentiary hearing on a habeas petition. The district court noted that § 2254(e)(2) focuses on "whether the petitioner was diligent in his efforts to develop the facts, not on whether they were discoverable." *Id.* at 20. The district court then reasoned that Mr. Owens did not contend that the newly offered information—Ms. King's attendance at Maurice Owens' funeral

and "that she may have had an intimate relationship with Maurice Owens"—"was not discoverable through the exercise of due diligence at the time of sentencing or at the time of the petitioner's appeal." *Id.* In fact, to the court, the opposite appeared to be the case: George Owens, Jr., claimed that he observed King at Maurice Owens' funeral prior to trial and spoke with her while the trial was ongoing. The court concluded that Mr. Owens was not entitled to an evidentiary hearing because he had not made the required showing set out in § 2254(e)(2).

## II

## DISCUSSION

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1), habeas relief may be granted only if the state court's adjudication on the merits of a claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003) (citing statute). A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's decision]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Anderson v. Cowan*, 227 F.3d 893, 896-97 (7th Cir. 2000) (quoting same). A state-court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state

prisoner's case." *Williams*, 529 U.S. at 407. A decision also may fall within this section if it "either unreasonably extends a legal principle" from existing precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* In applying this standard, however, the Court has cautioned federal habeas courts that "unreasonable" and "incorrect" are not synonymous: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see also Early v. Packer*, 537 U.S. 3, 11 (2002) (per curiam) ("[D]ecisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or based on 'an *unreasonable* determination of the facts' (emphasis added)."); *Dixon v. Snyder*, 266 F.3d 693, 700 (7th Cir. 2001) ("In order to issue a writ of habeas corpus, the state court decision must be both incorrect *and* unreasonable." (internal citations omitted)).

With these general instructions in mind, we turn to Mr. Owens' claims.

### A.  Impartial Jury Trial

Mr. Owens first maintains that King's presence on the jury deprived him of his Sixth Amendment right to an impartial jury. The state court of appeals found that "Owens [had] not alleged any facts to establish that Juror K [King] was biased against him. Indeed, the record discloses that Juror K may have been biased in Owens's favor." R.8, Ex.D at 11 (noting that the juror stated King may have had a relationship with

Mr. Owens and that she disliked white police officers who testified against Mr. Owens). Mr. Owens "does not challenge the Wisconsin Court of Appeals' decision on its face." Reply Br. at 3-4. Rather, in the district court, Mr. Owens sought to introduce two affidavits to support his claim that King actually may have been biased against him, contrary to the factual findings of the state court.[4] The district court, however, refused to consider Mr. Owens' submissions. Consequently, Mr. Owens "challenges [the district court's] refusal to allow him to rebut [the state court] decision with affidavits containing information not known or reasonably discoverable at the time of Owens' trial and postconviction proceedings." Reply Br. at 3-4.

Generally speaking, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001) (" '[S]tate court factual findings that are reasonably based on the record are accorded a presumption of correctness.' " (citations omitted)). However, before we are able to determine whether Mr. Owens has rebutted this factual finding, we must consider whether he may include,

---

[4] George Owens' affidavit asserts that after trial his son, George Owens, Jr., contacted him and informed him that he knew King and that "she was probably the girlfriend of Maurice Owens or knew him very well." R.25 at 2. His son also informed him that he had observed King crying at Maurice's funeral. *See id.* In George, Jr.'s affidavit he claims that King had an intimate relationship with Maurice, that he frequently saw King at Maurice's home before trial, that King called him at home during the trial and they discussed the funeral and those present, and that King signed the guest book at the funeral and sent her condolences to the family. *See* R.31.

for this federal habeas review, facts that he did not submit to the state court. We must consider what impact the underdevelopment of the factual record in the state court has on Mr. Owens' ability to supplement that record by the two affidavits submitted, for the first time, to the district court.

The ability of a habeas petitioner to introduce new evidence into the record depends on the interplay between two provisions: 28 U.S.C. § 2254(e)(2) and Habeas Corpus Rule 7. Section 2254(e)(2) addresses the requirements to obtain an evidentiary hearing. It provides: "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an *evidentiary hearing* on the claim unless the applicant shows . . . a factual predicate that could not have been previously discovered through the exercise of due diligence."[5] 28 U.S.C. § 2254(e)(2)(A) (emphasis added). Habeas Rule 7 preceded the enactment of this provision and speaks to when a district court may expand the record. It provides that the district "judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." Habeas Corpus Rule 7(a). Pertinent to the present situation, Rule 7(b) explains that "[a]ffidavits may be submitted and considered as a part of the record." *Id.*(b).

However, affidavits providing new information in a habeas petition will rarely permit resolution of a claim without an evidentiary hearing to assess credibility. *See, e.g.,*

---

[5] Section 28 U.S.C. § 2254(e)(2)(B) also requires that the petitioner demonstrate "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

Rules Governing § 2254 Cases, Rule 7, advisory committee note ("When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive." (quoting *Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir. 1970))); *Smith v. Zant*, 887 F.2d 1407, 1433 n.15 (11th Cir. 1989) ("[W]e fail to see how the state habeas court could have made a decision on Fisher's credibility when Fisher never gave oral testimony. We previously have expressed doubts as to whether a credibility determination can be fairly made on a paper record."). Therefore, the information that Mr. Owens wishes to present by affidavit actually requires testimonial evidence that necessitates not only inclusion of documents into the expanded record, but also concomitant credibility determinations.

We addressed similar efforts to supplement the record in *Boyko v. Parker*, 259 F.3d 781 (7th Cir. 2001). In *Boyko*, the habeas petitioner requested that the district court consider a transcript that had not been presented first to the state court. We recognized "that Mr. Boyko ha[d] not yet asked the district court to hold an evidentiary hearing; instead, he [sought] permission to conduct discovery and to expand the record." *Id.* at 790. However, we explained, "[t]hese procedural devices . . . can be used to introduce new factual information into the record in lieu of an evidentiary hearing. When expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an evidentiary hearing." *Id.* at 790 (citations and footnote omitted). We therefore held that the petitioner must satisfy § 2254(e)(2)'s "requirements before he may place new factual information before the federal court." *Id.* at 790. Thus, to introduce the new affidavits, Mr. Owens must satisfy the standards of § 2254(e)(2).

Section 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (*Williams II*), the Court explained that "failed to develop the factual basis," as used in this opening clause of § 2254(e)(2), is a "conditional clause" which must be satisfied before the remainder of § 2254(e)(2) comes into play. *Id.* at 431. The Court further stated that this clause "directs attention to the prisoner's efforts in state court": "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 431-32. In other words, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. If Mr. Owens establishes that he was diligent in his attempts to develop the factual record in the state court, he does not have to satisfy the remaining provisions of § 2254(e)(2) in order to obtain an evidentiary

hearing. *See id.* (stating that "only a prisoner who has neglected his rights in state court need satisfy these conditions").

Applying this standard to the facts before it, the Court in *Williams II* determined that the petitioner had been diligent in developing the factual record in the state court. In that case, the petitioner, while still in state court, had requested the appointment of a private investigator to look into alleged irregularities and improprieties in empaneling the jury. The state supreme court denied the motion. After filing a federal habeas action, an investigator working on behalf of the petitioner discovered that the key witness and a juror had been married and that a prosecuting attorney had provided legal services to the couple in securing a divorce. Despite the fact that the relationships were uncovered with ease, the Supreme Court held that counsel's first request satisfied the conditional clause in § 2254(e)(2). *See id.* at 443.

Mr. Owens contends that "there was no lack of diligence" on his part in developing the factual record in the state court. Mr. Owens argues that, when the note concerning King's unwillingness to deliberate first surfaced, he requested the opportunity to make further inquiries of King. The record does not disclose whether the court ever formally ruled on the request; however, it is clear that Mr. Owens was not afforded that opportunity.[6] Furthermore, Mr. Owens asserts that he never knew, or had reason to know, about his nephew's relationship with King until his son revealed that information to him at some time after he was sentenced. Consequently, Mr. Owens maintains that he did not "fail" to develop the record but was prevented from doing so by the state court.

---

[6] Instead, the court conducted a private interview and summarized the discussion at the sentencing proceedings.

We cannot agree with Mr. Owens' assertions concerning his diligence. As noted above, the burden is on Mr. Owens to establish the diligence that absolves him of meeting the remaining requirements of § 2254(e)(2). Mr. Owens, however, cannot establish his own diligence in developing the factual record in state court. It is true that, when the initial problem with King arose, Mr. Owens requested that the court allow him to question King. However, when the court later revealed to the parties its lengthier discussions with the foreperson concerning King, Mr. Owens did not renew his request. Furthermore, although the state trial court reported to the parties that King "may not have answered truthfully questions regarding knowing the defendant [and] his family," R.8, Ex.C at 19, apparently neither Mr. Owens nor his counsel questioned family members about their knowledge of King or of her potential bias. Finally, neither the affidavit of Mr. Owens nor that of his son set forth the time frame in which they discussed Maurice's relationship with King. Mr. Owens states in his affidavit that it was after his trial; however, he does not affirmatively state that the information was given to him at a time that he could not have presented it, in some manner, to the state court.

"Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." *Williams II*, 529 U.S. at 435. There is no question that, in the present case, Mr. Owens' counsel initially asked to question King. Here, unlike the situation in *Williams II*, additional information was presented to Mr. Owens first by way of the court. After receiving that information, Mr. Owens did not endeavor to question family members who may have known King. Later, Mr. Owens was informed by his son that King and Maurice were romantically involved. Again, the record does not reflect any effort by Mr. Owens to present this infor-

mation to the state court, nor does Mr. Owens argue to this court that such a mechanism was unavailable or would have been futile. Consequently, based on the record before us, we do not believe that Mr. Owens made reasonable attempts to develop the factual basis for his claim in state court.

Because Mr. Owens has not satisfied the conditional clause of § 2254(e)(2), he also must meet the remainder of the requirements set forth in that section. Mr. Owens, however, does not claim that he is able to make the necessary showings, nor do we believe that Mr. Owens could show, for instance, that no reasonable factfinder would have found him guilty of reckless endangerment absent the alleged constitutional error. *See* 28 U.S.C. § 2254(e)(2)(B). Consequently, we affirm the district court's denial of habeas relief on Mr. Owens' impartial jury claim.

## B. Confrontation

Mr. Owens next argues that he was denied his Sixth Amendment right to confront the witnesses against him when the trial court admitted into evidence the preliminary hearing testimony of Maurice Owens. The Court of Appeals of Wisconsin applied the standard set forth in *State v. Bauer*, 325 N.W.2d 857 (Wis. 1982), which, in turn, incorporated the framework set forth in *Roberts,* 448 U.S. 56, to determine whether Mr. Owens' Sixth Amendment right had been violated.[7] At the time of Mr. Owens' direct ap

---

[7] The fact that the state court relied upon its own case as opposed to relying directly on the federal standard is of no moment: "So long as the standard [the state court] applied was as demanding as the federal standard . . . the federal claim is deemed adjudicated on the merits and . . . entitled in this habeas corpus

(continued...)

peal, *Roberts* articulated the federal standard for evaluating Confrontation Clause violations; thus, we evaluate only whether the state court's application of the rule to Mr. Owens' claim was an unreasonable one.[8]

---

[7] (...continued)
proceeding to the deference prescribed by section 2254(d)(1)." *Oswald v. Bertrand,* 374 F.3d 475, 477 (7th Cir. 2004) (internal citations omitted).

[8] Section 2254(d)(1) provides that habeas relief shall not be afforded unless a state court reached a result "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." Furthermore, the law to be applied is the law as determined by the Supreme Court of the United States "at the time [the petitioner's] state court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *see id.* at 412 (noting that the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" contained in 28 U.S.C. § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions as of the time of the relevant state-court decision."). At the time of the state court decisions, there is no question that *Ohio v. Roberts*, 448 U.S. 56 (1980), set forth the applicable standard for evaluating Mr. Owens' Confrontation Clause claim.

Since that time, however, the Supreme Court reconsidered part of the holding of *Ohio v. Roberts*. In *Crawford v. Washington*, 124 S. Ct. 1354 (2004), the Court overruled that portion of *Roberts* that permitted testimonial evidence to be used against a defendant even when the prior testimony had been elicited without an opportunity for cross-examination. *See Crawford*, 124 S. Ct. at 1369 (citing *Roberts* and noting that the rationales of its prior decisions have not remained faithful to the original meaning of the Confrontation Clause); *id.* at 1370 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'").

(continued...)

In *Roberts*, the Supreme Court held accordingly:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

448 U.S. at 66.

Applying this standard, the Court of Appeals of Wisconsin found, and Mr. Owens did not dispute, that the preliminary examination testimony fit within a firmly rooted hearsay exception.[9] Nevertheless, Mr. Owens maintained

---

[8] (...continued)

Neither Mr. Owens nor the respondent has provided *Crawford* to this court as supplemental authority for their respective positions. Furthermore, neither of the parties have suggested to this court that, as a new rule of constitutional procedure, *Crawford* should be applied retroactively to Mr. Owens according to the standards of *Teague v. Lane*, 489 U.S. 288 (1989). We are hesitant to address this weighty issue when neither party has presented it to the court, and, therefore, reserve the question for another day. However, we note in passing that one circuit court has addressed the issue and has determined that *Crawford* should not be applied retroactively to cases on collateral review. *See Brown v. Uphoff*, 381 F.3d 1219, 1225-26 (10th Cir. 2004).

[9] The applicable hearsay exception was Wis. Stat. § 908.045(1). In relevant portion it provides:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(continued...)

that the preliminary hearing setting did not provide suf-
ficient opportunity for cross-examination with respect to a
witness' credibility. The state court rejected Mr. Owens'
argument and found that "[t]he record discloses that the
trial court did not significantly limit Owens's cross-exami-
nation of his nephew at the preliminary examination, and
that Owens's confrontation right was thus satisfied." R.8,
Ex.D at 4.

We do not believe that the state court's application of
*Roberts* was unreasonable. *Roberts* sets forth a two-part test.
In order to use a witness' out-of-court statement against the
defendant, the prosecution first must demonstrate that the
witness is unavailable. This requirement clearly is satisfied
here because the witness passed away prior to trial. *See, e.g.,
Haywood v. Wolf*, 658 F.2d 455, 460 (7th Cir. 1981).

Once unavailability is established, the second prong
requires that the statements offered "bear[ ] adequate 'in-
dicia of reliability.' " *Roberts*, 448 U.S. at 66. In *Roberts*, the
Court determined that the preliminary hearing transcript
bore "sufficient 'indicia of reliability' and afforded 'the trier
of fact a satisfactory basis for evaluating the truth of the
prior statement' " because counsel had "an adequate
opportunity to cross-examine [the witness], and counsel . . .
availed himself of that opportunity." *Id.* at 73 (quoting
*California v. Green*, 399 U.S. 149, 161 (1970) (alterations in

---

[9]  (...continued)
        (1) Former testimony. Testimony given as a witness at
        another hearing of the same or a different proceeding, or in a
        deposition taken in compliance with law in the course of
        another proceeding, at the instance of or against a party with
        an opportunity to develop the testimony by direct, cross-, or
        redirect examination, with motive and interest similar to
        those of the party against whom now offered.

original)). Expounding upon *Roberts*, the Supreme Court has
explained that an "adequate opportunity" does not neces-
sarily mean cross-examination of the length and breadth
afforded during trial: "Generally speaking, the Confrontation
Clause guarantees an *opportunity* for effective cross-exami-
nation, not cross-examination that is effective in whatever
way, and to whatever extent, the defense might wish."
*Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); *see also Green*,
399 U.S. at 166 (noting that even though preliminary hearing
testimony is often a "less searching exploration into the
merits," the opportunity to cross-examine the witness may
still satisfy the Confrontation Clause).

In applying *Roberts*, this circuit has upheld the use of
preliminary hearing testimony against a defendant when
the witness is unavailable. In *Haywood*, we acknowledged
that preliminary hearing testimony is often a " 'less search-
ing exploration into the merits' " than cross-examination at
trial, *id.* at 462 (quoting *Barber v. Page*, 390 U.S. 719, 725
(1968)), because the only function of a preliminary hearing
is to determine whether probable cause exists for holding
the accused for trial, *see id.* at 461. Despite the limited scope
of the inquiry, however, we explained that preliminary hear-
ing testimony is not "inherently unreliable" simply because
it was "not subjected to as extensive cross-examination as it
could have been at trial." *Id.* at 462. We determined that the
testimony in *Haywood* met the second prong of the *Roberts*
test because it "was given under circumstances that were
intended to impress upon him the importance of telling the
truth." *Id.* at 463. It was not a "casual statement made in an
informal setting" in which one reasonably might have felt
"at liberty to exaggerate or color his version of an event." *Id.*
Further, in *Haywood*, the witness "testified in open court
under oath and subject to criminal penalties for perjury." *Id.*
"His testimony was not about someone far removed from

the proceedings; [the defendant] was seated directly before him. . . ." *Id.* We explained that, although counsel's opportunity to cross-examine the witness was more limited than at trial, it was "more than adequate to allow him to determine precisely what [the witness] claimed to know and the claimed basis for his knowledge." *Id.*

Each statement applies with equal force to the preliminary hearing testimony of Maurice Owens. Maurice Owens appeared in open court, under oath, and in front of the defendant. He identified the defendant as the person who had fired a shotgun at a door through which he had walked. Mr. Owens' counsel was able to cross-examine Maurice about the argument he and Mr. Owens had, the timing of the events and the basis for Maurice's knowledge. Therefore, as in *Haywood*, the examination of Maurice allowed Mr. Owens to determine what Maurice claimed to have seen as well as the events that formed the basis of his testimony.

Before this court, Mr. Owens makes a general assertion that he was denied an opportunity to "examine the witness' credibility." Petitioner's Br. at 34. Mr. Owens, however, does not explain how the limitations on preliminary hearing testimony curtailed his ability to cross-examine Maurice Owens and, further, does not identify specific questions that he would have put to Maurice if he had been given more leeway in the examination. In short, Mr. Owens does not come forward with evidence that the cross-examination was so limited as to deny " 'the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' " *Roberts*, 448 U.S. at 65-66 (quoting *Green*, 399 U.S. at 161). Therefore, we cannot conclude that the state appellate court's decision was an unreasonable application of *Roberts*—the clearly established federal law as determined by the United States Supreme Court "at the time his state court conviction became final." *Williams*, 529 U.S. at 380.

## C.  Speedy Trial

Mr. Owens claims he was denied his Sixth Amendment right to a speedy trial. The Court of Appeals of Wisconsin correctly identified *Barker*, 407 U.S. 514, and *Doggett*, 505 U.S. 647, as the standard for determining whether a defendant's right to a speedy trial has been abridged.

In *Barker*, the Supreme Court set forth four factors to assess whether a defendant has been denied a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. "The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530. The Court reiterated this proposition in *Doggett*:

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness.

*Doggett*, 505 U.S. at 651-52. However, the Court explained that, due to the imprecise nature of the speedy trial right, the length that will be considered presumptively prejudicial "is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. Thus, for example, the delay that will be tolerated for an ordinary street crime is less than will be permissible for a more complex case.

We do not believe that the Court of Appeals of Wisconsin unreasonably applied this standard in adjudicating Mr. Owens' claim. The court correctly identified the four factors to be considered in determining whether a defendant had

been denied his right to a speedy trial and also correctly characterized the first factor as a "threshold consideration." R.8, Ex.D at 9. The court then determined that the seven-month delay in bringing Mr. Owens to trial was "relatively short" and therefore not "presumptively prejudicial." *Id.* The court nevertheless considered the remaining factors; it stated:

> The record reveals that Owens consistently asserted his right to a speedy trial. The short delay in proceeding to trial and the cause for the delay, however, weigh heavily against Owens's claim. As noted, Owens was not produced for the first scheduled trial date, and the victim, Owens's nephew, was unavailable on both the first and second scheduled trial dates. The only prejudice that Owens claims to have suffered as a result of the delay in proceeding to trial is that his nephew had died and was unable to be confronted regarding his testimony. This claim of prejudice is not supported by the record, however, because Owens's nephew was not present for the earlier trial dates, and thus he would not have been available for cross-examination if the trial had proceeded earlier. Owens's constitutional right to a speedy trial was not violated.

*Id.* at 9-10.

Despite this thorough analysis, Mr. Owens maintains that the Court of Appeals of Wisconsin did not heed the instruction in *Barker* that a court must consider the particular circumstances of each case to determine whether the delay is presumptively prejudicial. We believe that this argument is without merit. The state appellate court noted that the delay was "relatively short" and not "unreasonable," *id.* at 9; the court also quoted the instruction in *Doggett* that, "[d]e-pending* on the nature of the charges," delays approaching one year have been considered presumptively prejudicial,

*id*. (quoting *Doggett*, 505 U.S. at 651 n.1) (emphasis added). These statements indicate that the court both recognized its responsibility to look at the circumstances of the case and considered the delay in comparison to other cases. Therefore, we believe that the Court of Appeals of Wisconsin undertook the correct analysis even though it did not comment on the specific characteristics or complexity of Mr. Owens' case.

Further, even if the state appellate court had erred in determining that the seven-month delay was not presumptively prejudicial, the court assessed the remaining balancing factors in accordance with *Barker*. The court acknowledged that Mr. Owens had asserted his right to a speedy trial and that this factor weighed in his favor. However, the remainder of the factors weighed against Mr. Owens. The court noted that, not only had there been a relatively short delay, but there also had been good cause for the delay: The victim could not be located and therefore could not be made to appear for the first and second scheduled trial dates.

Mr. Owens argues that the State is to blame for not finding Maurice Owens, and, therefore, this factor should not weigh against him in the speedy-trial analysis. However, Mr. Owens has not pointed to any evidence that suggests that the missing witness was a "deliberate attempt to delay the trial in order to hamper the defense." *Barker*, 407 U.S. at 531. Instead, as *Barker* itself explained, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

Finally, Mr. Owens did not establish any prejudice as a result of the delay. Mr. Owens' only claim of prejudice is that, as a result of Maurice's death, he was unable to confront Maurice at his trial. In most instances, when "wit-

nesses die or disappear during a delay, the prejudice is obvious." *Barker*, 407 U.S. at 532. However, in the present situation, the state appellate court noted, Maurice Owens was not present at either of the previous trial dates, and, therefore, Mr. Owens would not have been able to cross-examine Maurice Owens had the trial occurred on one of these earlier dates.[10] Without some specific demonstration that the State impermissibly caused the delay or was deficient in their efforts to locate a key witness, the prejudice can be attributable only to the preexisting condition of a missing witness and not to any delay in the trial. *See id*. ("Prejudice, of course, should be assessed in light of the interests of defendants which the speedy trial right was designed to protect.").

In sum, the application of *Barker* and *Doggett* to Mr. Owens' speedy-trial claim was not unreasonable. Consequently, Mr. Owens is not entitled to habeas relief on this basis.

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

---

[10] Mr. Owens does not claim that Maurice Owens' preliminary hearing transcript would not have been admissible against him on the prior dates; indeed, such a claim appears untenable. *See* Wis. Stat. § 908.04(1) ("'Unavailability as a witness' includes situations in which the declarant: . . . (d) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (e) Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means.").

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*