NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0350n.06
Filed: May 18, 2007

No. 06-3833

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MAHAD H. SAMATAR, | ) | |
| *Plaintiff - Appellant*, | ) | |
| | ) | |
| v. | ) | On Appeal from the |
| | ) | United States District Court |
| MARK CLARRIDGE, Warden | ) | for the Southern District of Ohio |
| *Defendant - Appellee.* | ) | |
| | ) | |

BEFORE:    SUHRHEINRICH and GIBBONS, Circuit Judges; HEYBURN,[*] Chief District
Judge

JOHN G. HEYBURN II, Chief District Judge. This is an appeal of the denial of a petition

for habeas corpus. Mahad H. Samatar was found guilty in Ohio state court of possession of

cathinone, a Schedule I controlled substance under Ohio law. Samatar was in possession of a shrub

known as khat, which has been known to contain the controlled substances cathinone and cathine.

At trial, the state's expert revealed that upon testing of the plant material, he discovered substantial

amounts of cathinone but no cathine. Such a test result appears scientifically improbable, and

Samatar has claimed that the state's sole test establishing an element of his crime is invalid, and he

was denied effective assistance of counsel. After exhausting appeals and remedies in state court,

Samatar filed his federal habeas corpus petition. He now appeals the dismissal of that petition. For

---

[*] The Honorable John G. Heyburn II, United States Chief District Judge for the Western District of
Kentucky, sitting by designation.

the reasons explained below, we will affirm the district court.

I.

On February 15, 2001, Mahad H. Samatar arrived at a Federal Express location in Columbus, Ohio, and presented the tracking number for a package. Unbeknownst to Samatar, the Columbus police department had been alerted to the arrival of the package, from which brownish-red stems of vegetation were protruding. Believing the vegetation to be khat (pronounced "cot"), the police had arranged for the package to be picked up under controlled conditions. Samatar signed the name "John Goodman" on the signature record and took possession of the package. He was subsequently arrested, and the package was seized and submitted for analysis to the laboratory at the Ohio Bureau of Criminal Investigation ("BCI").

Khat, or "catha edulis," is a shrub which grows wild and as a cash crop in Kenya, Somalia, Yemen, and other countries in Northeastern Africa.[1] Its leaves are chewed or brewed into a tea, and it is estimated that approximately 60 to 70 percent of Somalis chew or drink khat on a regular basis. Khat has been known to contain the psychoactive chemical cathinone, a stimulant. Cathinone is listed as a Schedule I controlled substance under Ohio law. *See* Ohio Rev. Code Ann. § 3719.41, Schedule I, (E)(2). Khat also contains the less potent stimulant, cathine, a Schedule IV controlled

---

[1] Samatar testified that he immigrated in 1998 from Somalia, where he claims it is a cultural tradition to chew khat at weddings. He said that the khat at issue was sent to the United States by a resident in London named "Abdid" for use at a Somali wedding ceremony. According to Samatar, Abdid had told him the control number of the package but not the name on the package, and when the package was brought to him he noticed the name written on it and signed the log with that name. He further testified that the khat was harvested in Kenya and shipped to London by airplane, probably after a delay of several days. Samatar further claimed that there is no stimulant effect in khat, it is not illegal in Somalia, he had never heard of cathinone, and he was unaware that khat contained cathinone. He agreed that khat is sold in the Columbus Somali community for $20 to $40 a bundle.

substance under Ohio law. *See* Ohio Rev.Code Ann. § 3719.41, Schedule IV, (D)(1).

Gregory Kiddon, a forensic scientist with over 20 years of experience at BCI, conducted a chemical analysis of the seized plant material. Plant samples were removed from the boxes on February 16, 2001, and frozen until the chemical analysis was performed on July 24, 2001. Kiddon prepared a report of his findings that was submitted by the State into evidence at trial. According to the report, all samples were found to contain cathinone. Kiddon further testified that he found no cathine in any of the samples.

A.

Samatar was indicted by the Franklin County Grand Jury for two counts of Aggravated Possession of Drugs pursuant Ohio Rev. Code Ann. § 2925.11. Count I of the indictment alleged that Samatar "did knowingly obtain, possess, or use a controlled substance included in Schedule I, to wit: Cathinone, commonly known as Khat, in an amount equal to or exceeding one hundred times the bulk amount as defined in section 2925.01 of the Ohio Revised Code." Count 2 was an identical allegation in regards to cathine. The State later dismissed the second count alleging possession of cathine.

Samatar waived jury and was tried by the trial court. Defense counsel attempted to impeach Kiddon's testimony with an article issued by the United States Department of Health and Human Services, entitled "Basis For The Recommendation For Control of Cathinone Into Schedule I Of The Controlled Substances Act" ("HHS Report"). Kiddon acknowledged that the article was authoritative. The report expressed the opinion that 100 grams of fresh khat is estimated to contain

36 mg of cathinone and 120 mg of cathine, among many other chemicals. According to the report, within 72 hours of harvest, the naturally occurring cathinone rapidly decomposes into cathine. The report further stated that fresh khat contains 100 times more cathinone than dried khat.

Kiddon acknowledged the foregoing information contained within the report. He testified that he had frozen the plant material until the chemical analysis could be performed because he was aware that in the cathinone-to-cathine conversion process, some of the plant's phychotropic potency was lost. When pressed about his finding that the samples he tested contained cathinone, but no cathine, Kiddon admitted that he was surprised by the results but remained firm in his conviction that his chemical analysis was correct. Specifically, Kiddon stated that he could not "find any peaks that I could identify as cathine," and rejected defense counsel's suggestion that he misidentified cathine as cathinone.

Following trial, the court found Samatar guilty of possessing cathinone. In addition, the Court found that the amount possessed was over one hundred times the bulk amount, and Samatar was sentenced to a mandatory ten years imprisonment.

B.

Samatar timely filed a Motion for New Trial, claiming that the State's expert evidence regarding the "no cathine" finding was scientifically impossible and the result of faulty testing methodology by Kiddon.[2] Attached to the motion was an affidavit of Dr. Michael Jon Kell, MSChE MD PhD, in which he challenged the result and methodology of Kiddon's chemical analysis. Also

---

[2] The December 14, 2001, Motion for New Trial was filed jointly by Samatar's original trial attorney Sidney Moore and new counsel Carol Wright.

attached was a second affidavit from trial counsel, Sidney Moore. Moore stated that when the State

dismissed the fourth degree felony possession of cathine charge, he believed the state was merely

making a choice to avoid issues of double jeopardy. He had been totally surprised by the testimony

of the State chemist that he had found no cathine but actually tested for it. The trial court denied the

Motion for New Trial, and Samatar timely appealed to the state appellate court. The appellate court

affirmed the conviction and sentence of Samatar, and the Ohio Supreme Court declined to accept

jurisdiction.

While the direct appeal to the state appellate court was pending, Samatar, through counsel

Wright, filed a petition for postconviction relief in the trial court pursuant Ohio Rev. Stat. Ann. §

2953.21, raising six claims of ineffective assistance of counsel.[3] The petition was supported by two

affidavits; one from Attorney Richard Ketcham outlining how trial counsel's performance was

unreasonable and fell below prevailing professional norms and one from Dr. Alfred Staubus

outlining the problems with distinguishing between cathinone and cathine, the inability to quantify

the chemicals and the problems of using a gas chromatograph as well as what assistance he could

have provided trial counsel. Additional documentary support included articles about khat and the

difficulty in distinguishing the chemicals, as well as the problems with using a gas chromatograph

to distinguish the chemicals. The trial court denied the petition, and Samatar, through Wright,

---

[3] Samatar complains that his trial counsel, Georgia attorney Sidney L. Moore, Jr., was constitutionally ineffective. Interestingly, Moore, who was granted pro hac vice status in Samatar's Ohio case, is very experienced in the defense of khat possession cases, having defended such cases in at least eleven states, including: Georgia, Kansas, Maine, Maryland, Michigan, New York, North Carolina, Ohio, Tennessee, Texas, and Virginia. *See State v. Roble*, No. L-04-1374, 2006 WL 205101 at *2 (Ohio Ct. App. January 27, 2006). In fact, Moore has successfully represented a petitioner-appellant before this Court in a federal khat possession case. *See U.S. v. Caseer*, 399 F.3d 828 (6th Cir. 2005) (conviction reversed and remanded for further proceedings).

appealed the denial. The appellate court affirmed the denial of postconviction relief. Samatar, through Wright, appealed to the Ohio Supreme Court. The Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On November 22, 2004, Samatar, through counsel Wright, filed the instant Petition for Writ of Habeas Corpus and a Motion for Discovery. Respondents filed responses to both. The Magistrate Judge issued an Opinion and Report and Recommendations recommending that the action be dismissed, and that Petitioner's request for discovery and evidentiary hearing be denied. Samatar filed Objections, but the District Court issued an opinion and Order Adopting and Affirming the Report and Recommendations and dismissed the petition. Samatar, through counsel Wright, filed a notice of appeal and a motion for certificate of appealability, which was granted by the District Court on May 16, 2006.

II.

When reviewing the denial of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, this Court considers the district court's legal conclusions *de novo*. *Carter v.* Bell, 218 F.3d 581, 590 (6th Cir. 2000). "Factual determinations are generally reviewed for clear error, 'except where the district court has made factual determinations based on its review of trial transcripts and other court records.'" *Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir. 2006) (citing *Mackey v. Russell*, 148 Fed. App'x 355, 359 (6th Cir. 2005)). "In such cases, because no credibility determination or findings of fact are required, factual conclusions are reviewed *de novo*." *Id.* (citing *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000)). In reviewing habeas petitions, we afford a state court's factual

determinations a presumption of correctness. But, they may be rebutted by clear and convincing evidence. *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005); 28 U.S.C. § 2254(e)(1) (providing that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct"). The district court's decisions denying discovery and an evidentiary hearing are reviewed under an abuse of discretion standard. *Abdus-Samad v. Bell*, 420 F.3d 614, 626 (6th Cir. 2005).

Samatar certified four issues on appeal: (1) whether he was denied effective assistance of counsel, (2) whether the evidence was insufficient to sustain his conviction, (3) whether the affidavit of Dr. Staubus may be considered in support of his claim for ineffective assistance of counsel, and (4) whether he should be granted discovery or an evidentiary hearing. We will consider each in turn.

III.

Samatar claims ineffective assistance of counsel because his attorney failed to question the State's chemist prior to trial regarding his lab report, failed to submit into evidence any "substantive evidence" of the chemical composition of khat, failed to call an expert witness to discredit the State's chemist, and failed to request a continuance when he was surprised by the chemist's testimony that the khat material contained no cathine.

In support of this claim, Samatar points to an affidavit of his trial attorney which states in relevant part that Moore believed that the "cathine" charge had been dropped because the state chose to go with the Schedule I substance rather than the Schedule IV substance to avoid the problems of

double jeopardy. Moore says that he was totally surprised by Kiddon's testimony that he had found cathinone but no cathine in the plant samples. Samatar also relies on the affidavits of proposed expert witnesses Dr. Michael Kell and Dr. Alfred Staubus expressing their professional opinions that the results of the BCI test indicate a mistaken testing methodology.

A claim of ineffective assistance of counsel comprises two elements: (1) the attorney's performance was deficient, falling below an objective standard of reasonableness; and, (2) the attorney's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a trial strategy." *Id.* at 689. "Judicial scrutiny of a counsel's performance must be highly deferential" and every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citing *Strickland*, 466 U.S. at 689).

### A.

To prevail on the deficiency prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Where counsel has failed to investigate, his decisions will be deemed reasonable only to the extent that they are supported by reasonable investigation. *See Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (holding that

a decision not to investigate must be directly assessed for reasonableness in all circumstances). Some courts have held that the duty to investigate includes the duty to consult and retain all reasonably necessary experts. *See, e.g., Horsely v. State of Alabama*, 45 F.3d 1486, 1494-95 (11th Cir. 1995).

The Ohio Court of Appeals was satisfied that Moore adequately performed such duties and that his actions were part of a reasonable trial strategy. We agree with the Ohio court's analysis of Moore's trial performance. The fact that defense counsel did not interview the prosecution's expert witness Kiddon may be explained by reasonable trial tactics. A pretrial interview could alert the witness to particular lines of questioning for which he could further prepare before trial. Thus, pretrial questioning could rob a cross-examination at trial of some of its force. In fact, defense counsel thoroughly cross-examined Kiddon on his "no cathine" finding using an authoritative article on khat. Although defense counsel asserted in an affidavit that he was "totally surprised" by the expert's testimony, his surprise at trial does not make his strategy unreasonable, and such hindsight would be inappropriate under *Strickland*. 466 U.S. at 688.

Moreover, Moore's failure to seek a continuance after the supposed surprise does not make defense ineffective. In reviewing a claim of ineffective assistance of counsel, courts should decline second-guessing an attorney's trial strategy. *State v. Williams*, 600 N.E.2d 298, 304 (Ohio Ct. App. 1991). The decision whether to call a witness is generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel. *Id.* Further, the failure to call an expert and instead rely on cross-examination does not

constitute ineffective assistance of counsel. *State v. Hartman*, 754 N .E.2d 1150, 1177 (Ohio 2001). In fact, in many criminal cases trial counsel's decision not to seek expert testimony "is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." *State v. Glover*, No. CA2001-12-102, 2002 WL 31647905 at *5 (Ohio Ct. App. Nov. 25, 2001). "Further, even if the wisdom of such an approach is debatable, 'debatable trial tactics' do not constitute ineffective assistance of counsel." *Id.* (quoting *State v. Clayton*, 402 N.E.2d 1189 (Ohio 1980)). We will not second-guess Moore's trial tactics in these circumstances. His performance meets an objective standard of reasonableness. His representation of Samatar was not constitutionally deficient.

B.

Nor did Moore's performance prejudice Samatar. To satisfy the prejudice requirement, an ineffective assistance claimant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The record does not demonstrate that Kiddon's finding of cathinone was inherently wrong. Instead, as recognized by the state courts, Kiddon could have legitimately found cathinone while being mistaken about cathine. The record does not demonstrate that additional testimony by an expert such as Dr. Kell or Dr. Staubus would have cast any more doubt on Kibbon's test results than the HHS study impeachment evidence or Moore's cross-examination. The credibility determination

by state courts of which expert to believe, is not reviewable by a habeas court. *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983).

Samatar may now wish that his trial counsel had employed a different strategy, but that does not mean that he was denied effective counsel. Moore cross-examined the state's witness with great skill and effect. Unfortunately, the court believed enough of Kiddon's testimony to find Samatar guilty.

## IV.

Samatar next argues that he was deprived of his Constitutional right to due process because his conviction for aggravated possession of a controlled substance, to wit, cathinone, in an amount over one hundred times the bulk amount, was not supported by sufficient evidence. The Due Process Clause of the Fourteenth Amendment prevents a state from convicting a person of any crime without proving the elements of that crime beyond a reasonable doubt. *Fiore v. White*, 531 U.S. 225, 228-29 (2001) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). We must consider not whether there was any evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 316 (citing *In re Winship*, 397 U.S. 358, 364 (1970)). Such evidence must be viewed in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326).

Samatar argues that Kiddon's testimony, which was the only direct evidence that he was ever

in possession of cathinone, reveals that the BCI testing was flawed and fails to prove a critical element in the offense for which Samatar was convicted. The state's test results for cathinone appear to be improbable. We question why the prosecution presented such evidence rather than perform additional tests on the khat. However, in reviewing the sufficiency of the evidence claim, we must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of witnesses. *Jackson*, 443 U.S. at 319; *Walker*, 703 F.2d at 969. Kiddon maintained that his finding was correct, even if his finding of no cathine was flawed. His strong testimony created sufficient evidence to justify a rational trier of fact in finding the khat in Samatar's possession contained a high level of cathinone. Since a reasonable trier of fact could find guilt beyond a reasonable doubt, there is no basis for this Court to overturn that finding.

Samatar further argues that Kiddon's testimony would have been inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This argument, which was never presented to the state courts and first presented in Samatar's habeas petition, is inapplicable. When asked by the trial court, Moore had no objection to Kiddon being qualified as an expert. Moreover, the *Daubert* issue was not certified for appeal.

V.

Appellant argues that the Ohio trial court erred when it barred his ineffective assistance of counsel claims in his petition for post conviction relief. In support of those claims, he attached the affidavit of Dr. Alfred Staubus, a chemist who suggests that the BCI laboratory misidentified cathine for cathinone and attacks the validity of the Kiddon's lab report. The trial court applied the doctrine

of *res judicata* because the court of appeals had considered and ruled on the same issue. Under the doctrine of *res judicata*, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment. *State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996) (discussing *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967)).

Samatar argues that *res judicata* should not apply because Ohio law prohibited supporting affidavits during his first and only opportunity to litigate the ineffective assistance of counsel claim. Ohio appellate courts are strictly limited to considering matters that appear in the record from the trial. *State v. Ishmail*, 377 N.E.2d 500, 502 (Ohio 1978). He could not have argued the claim at an earlier stage, such as in his motion for new trial, because he was still represented by Moore on that motion, and Ohio law prohibits counsel from raising claims of his own effectiveness. *See State v. Lentz*, 640 N.E.2d 839 (Ohio1994). Thus, he argues, even though he had the opportunity to raise claims of ineffective assistance of counsel on direct appeal, the post conviction petition was the first opportunity he had to supplement the record on such a claim.

If petitioner's trial counsel had remained as counsel during the direct appeal, *res judicata* would not apply. *Combs v. Coyle*, 205 F.3d 269, 277 (6th Cir. 2000) (holding that post conviction claims for ineffective assistance of counsel will not be barred on *res judicata* grounds when such claims were not brought on direct appeal because petitioner's trial counsel continued to represent him on direct appeal), *cert. denied*, 531 U.S. 1035 (2000); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th

Cir. 2002) (holding that "although Ohio courts generally require defendants to raise ineffective assistance of trial counsel claims on direct appeal, (citation omitted), as the district court ruled, the default is not necessarily fatal here because one of Petitioner's trial counsel remained on the direct appeal team"). However, in this case, Samatar's trial counsel Moore was not counsel during the direct appeal, and Samatar actually litigated his claim of ineffective assistance of counsel.

In Ohio, claims of the denial of the effective assistance of counsel cannot be considered in post conviction proceedings where they were or could have been fully litigated, *see Perry*, 226 N.E.2d at 108, unless they are dependent on matters outside the record. *See* Ohio Rev. Code § 2953.21 *et. seq.*; *and see State v. Keith,* 684 N.E.2d 47, 67 (Ohio 1997); *State v. Madrigal*, 721 N.E.2d 52 (Ohio 2000). Samatar's ineffective assistance claim is not dependant upon matters outside the record because the Staubus affidavit merely supports arguments already made in the record, *i.e.*, that the prosecution's test for cathinone was invalid. Such arguments do not create a new and separate claim. Accordingly, we conclude that the district court properly applied *res judicata* to Samatar's claims for ineffective assistance of counsel and Staubus's affidavit. As noted by the state court and the Magistrate Judge in his Report and Recommendation, "the fact that [Samatar] now attaches additional evidence in support of his claims does not make the doctrine of *res judicata* inapplicable. [Samatar] cannot simply continue submitting additional evidence in support of his arguments on multiple occasions."

## VI.

Samatar argues that regardless of whether *res judicata* was properly applied by the state

court, the Staubus affidavit should be considered in the federal habeas proceedings through either an evidentiary hearing or additional discovery. We do not find that either is appropriate in these circumstances.

## A.

An evidentiary hearing will be appropriate only if the "respondent was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed by § 2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004). Therefore, the affidavit may be considered in habeas through an evidentiary hearing only if Samatar satisfies the two-part test contained in 28 U.S.C. § 2254(e):

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -
> (A) the claim relies on -
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). To merit an evidentiary hearing in habeas under § 2254(e), petitioner must have been diligent by seeking an evidentiary hearing "in state court in the manner prescribed by state law." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Section 2254(e) requires that the factual predicates could not have been discovered through the exercise of due diligence.

> [The prisoner must make a reasonable attempt,] in light of the information available at the time, to investigate and pursue claims in state court . . . Though lack of diligence will not bar an evidentiary hearing if efforts to discover the facts would have been in vain, *see* 2254(e)(2)(A)(ii), and there is a convincing claim of innocence, *see* § 2254(e)(2)(B), only a prisoner who has neglected his rights in state court need satisfy these conditions.

*Id.* at 435. Here, the state appellate court refused to consider the Staubus affidavit, noting that Samatar had advanced no reason why he could not have presented it when he first had the opportunity to do so in support of his motion for new trial. Samatar never requested an evidentiary hearing in his motion for new trial, wherein he first submitted Dr. Kell's affidavit challenging the BSI testing methods for khat. A failure to request a new trial hearing waived the issue of whether an evidentiary hearing should have been conducted by the trial court on that motion.

B.

The discovery process of the Federal Rules of Civil Procedure does not automatically apply to habeas corpus actions, and a habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). A habeas petitioner's request for discovery is subject to a minimal standard of "good cause." *Id.* at 909. Under this standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Id.* at 908-09. However, "[w]hen expansion of the record is used to achieve the same end as an evidentiary hearing, the petitioner ought to be subject to the same constraints that would be imposed if he had sought an

evidentiary hearing." *Owens v. Frank*, 394 F.3d 490, 499 (7th Cir. 2005) (quoting *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001). Thus, for the same reasons that Samatar should be denied an evidentiary hearing, he should also be denied additional discovery.

For the reasons stated above, we AFFIRM the district court's denial of Samatar's habeas corpus petition.