NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0679n.06
Filed: August 9, 2005

No. 02-4237

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **MAURICE MACKEY,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| **HARRY K. RUSSELL**, Warden, | ) | **O P I N I O N** |
| | ) | |
| *Respondent-Appellee*. | ) | |

BEFORE:     MARTIN, COLE, and GIBBONS, Circuit Judges

**R. GUY COLE, JR., Circuit Judge.** Petitioner-Appellant Maurice Mackey was convicted of murder and attempted murder. He now appeals the district court's denial of habeas corpus relief. Mackey alleges that he was denied his Sixth Amendment right to effective assistance of counsel, and that he was denied due process by the government's use, for impeachment purposes, of both Mackey's prior misconduct and his invocation of his *Miranda* right to remain silent following his arrest. Because we find that the state appeals court failed to consider the cumulative effect of Mackey's attorney's errors, and because Mackey's attorney's errors likely prejudiced the jury's verdict given the paucity of evidence as to who drew his gun first, we **VACATE** the judgment of the district court and **REMAND** with instructions to issue a conditional writ of habeas corpus, giving the State of Ohio 180 days within which to retry Mackey or release him from state custody.

## I.

On the night of April 14, 1999, Maurice Mackey and his girlfriend Stephanie Whitmore were at a bar known as the Office Lounge in Cleveland. Also there were off-duty out-of-uniform Cleveland Police Officer David Smith and his friend Edward Wright, an off-duty mall security guard. Officer Smith's girlfriend, Bridget Jackson, worked as a dancer at the lounge. When Whitmore walked over to Smith, Wright, and Jackson to ask Jackson if she would perform a "lap dance" for Mackey, Smith made a remark which Whitmore interpreted as hostile. When Whitmore returned to the table she and defendant Mackey were sharing, Mackey asked her what Smith had said, and she said she had not heard. Smith and Mackey then exchanged several hostile stares, but never spoke to each other. After fifteen to thirty minutes of hostile glances, Mackey and Whitmore decided to leave to avoid trouble. Smith and Wright decided to leave at the same time.

In the parking lot, Mackey and Whitmore heard the door to the lounge open behind them. Wright testified that Mackey turned around and asked if Smith and Wright had a problem with him. Mackey testified that Smith asked if Mackey had something to say to him. Either way, it is undisputed that both men then drew handguns. It is also undisputed that Mackey shot Smith, killing him instantly, and then shot Wright, injuring him, as he turned to flee. Mackey testified at trial that he had seen Smith begin to draw his gun, and that in response, Mackey drew his weapon in self-defense. Neither Whitmore nor Wright were in a position to see which man drew first, and there were no other witnesses to the shooting.

Neither man had any reason to know the other was carrying a firearm; Mackey was carrying his gun illegally, Smith was not in uniform, and the men had never met each other before. The

coroner testified that forensic evidence showed Smith had indeed drawn his gun at the time he was shot; the gun was found gripped in his hand away from the holster, with a bullet in the chamber. In addition, there was laboratory evidence that Smith was legally intoxicated at the time of the shooting. No other direct physical or testimonial evidence was introduced that would tend to show who drew first.

Immediately after the shooting, Mackey fled with Whitmore to their house in Solon, Ohio. From there, Whitmore called a friend who worked at the lounge. When she found out that one of the victims was not expected to live, she told the friend not to mention the call. The friend informed the police, who came to the Solon house and knocked on the door. Mackey and Whitmore did not answer, but later that morning, on the advice of their attorney, they surrendered to the police.

Mackey was convicted of murder in the Cuyahoga County Court of Common Pleas, and properly exhausted all required state court review of the claims now before us. The parties agree that the only disputed issue at trial was who drew first, Mackey or Smith. Mackey alleges three errors at trial that strongly prejudiced the jury against him on this question. First, he argues that the prosecutor's portrayal of Mackey as a violent person through prior bad acts constitutes reversible error. Next, he claims that his due process rights were violated when the court repeatedly allowed the prosecutor to mention Mackey's post-arrest silence. Finally, he claims that his appointed counsel, John Luskin, was constitutionally ineffective, because he (a) called Whitmore as a witness when she had nothing to add to his case; (b) failed to request a limiting instruction to limit the use of facts regarding Mackey's prior bad acts that were used to impeach Whitmore; (c) failed to object to the use of Whitmore's prior bad acts, which, Mackey argues, worked to prove guilt by

association; (d) failed to object to the introduction of evidence that Mackey maintained an "arsenal" of guns at his house; (e) failed to object to prosecutorial statements that could imply that Mackey was guilty solely because he was carrying a gun illegally; and (f) failed to object to the prosecutor's repeated reference to Mackey's post-arrest silence as evidence of his guilt.

## II.

We review the decision of a district court to grant or deny a writ of habeas corpus *de novo*, but review factual findings by that court for clear error, except where the district court has made factual determinations based on its review of trial transcripts and other court records; in such cases we review such findings *de novo*. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000). However, both we and the district court may grant a writ of habeas corpus vacating a state court conviction only if we conclude that the state courts' decisions are "contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(b).

### A. Prior Bad Acts Evidence

Mackey first claims that the prosecutor's portrayal of Mackey as a violent person, through Whitmore's testimony as to Mackey's prior bad acts, was reversible error. At trial, on cross-examination, the prosecutor asked Whitmore if Mackey was a jealous or violent type of person. When she answered in the negative, the prosecution then proceeded to ask her about several previous times when Mackey had been violent, including once towards Whitmore and another time towards a man who had been harassing her. After extensive voir dire, the trial court decided to allow the introduction of these prior acts for the purpose of impeaching Whitmore. Mackey claims

that the trial court erred in allowing this testimony, basing this claim on the Ohio Rules of Evidence, as well as on fundamental due process concerns under the Fifth Amendment of the U.S. Constitution.

Mackey argues that the admission of the prior bad act evidence violated the Ohio Rules of Evidence in two ways: First, he claims, its admission violated the rule against collateral impeachment. Ohio R. Evid. 404(A)(3), 608(B). In addition, Mackey argues that Whitmore's testimony was not proper as evidence of Mackey's "motive or intent," and was thus not relevant to his case. *See* Ohio R. Evid. 404(B). However, since we are "highly circumscribed in [our] ability to second-guess state . . . court rulings on state law in order to grant habeas relief," *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004), we can only grant habeas on this ground if the state court's violation (if any) of the state's rules of evidence so seriously impugned fundamental fairness as to deny a fair trial. *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988).

As to the first of the two Ohio evidentiary claims, Mackey argues that the State, having asked Whitmore about Mackey's jealousy and prior violence, should not have been able to inquire into her truthfulness on these subjects, because Whitmore had not testified to them on direct examination, and because the issues were collateral and "not material to any issue in the trial." *See, e.g.*, *United States v. Warledo*, 557 F.2d 721, 726 (10th Cir. 1977); *State v. Boggs*, 588 N.E.2d 813, 817 (Ohio 1992). This contention is incorrect. The state trial court allowed the prosecution's inquiries into the acts at issue only for the purposes of impeaching Whitmore, not for the purposes of attacking Mackey. The state appeals court noted that, in two of the incidents at issue, Whitmore had lied to the police about Mackey committing a crime. *State v. Mackey*, No. 75300, 1999 WL 1129589, at

\*4 (Ohio Ct. App. Dec. 9, 1999). This, the court found, was directly related to the issue of Whitmore's truthfulness, and thus the trial court did not abuse its discretion in allowing the use of the evidence for the purposes of impeaching Whitmore, under Ohio Rules of Evidence 404(A)(3) and 608(B). This reasonable conclusion evinces no constitutional error.

As to Mackey's second claim, that the evidence should not have been used against him directly as evidence of motive or intent, Mackey argues that, because he had claimed self-defense, motive and intent, as elements of murder, were no longer at issue; and that, in any case, the trial court never admitted this evidence as proof of motive or intent. The state appellate court found that the evidence *was* properly admitted under Ohio R. Evid. 404(B), which allows use of character evidence to show a defendant's motive or intent. Stating that the trial court "did not abuse its discretion by admitting the evidence under [Ohio] Evid. R. 404(B)," the state appellate court found no error in the use of this evidence against Mackey directly. Mackey, 1999 WL 1129589, at \*4.

However, as Mackey notes on appeal, the trial court did *not* admit the evidence under Rule 404(B), but rather admitted it under Rule 404(A)(3), which only allows evidence related to the character of a testifying witness as to the witness's credibility. As a result, the state appellate court's decision that the evidence was properly introduced against Mackey directly was clear error, since in fact the trial court did not allow it to be introduced against him directly. However, since both the trial court and the state appellate court reasonably found that the evidence was usable for the alternate purpose of attacking Whitmore's credibility, Mackey can claim no constitutional error in the trial court's admission of the testimony. *See, e.g.*, *NLRB v. Dayton Motels, Inc.*, 474 F.2d 328,

333 n.3 (6th Cir. 1973) ("The doctrine that evidence inadmissible for one purpose can be admitted for another purpose is firmly established in the law.").

Given the state trial and appellate courts' determination that the evidence was admissible to impeach Whitmore under Ohio law, we find no error worthy of habeas relief in the state courts' decisions to allow the admission of this testimony, the state appeals court's misstatement of the decision below notwithstanding.

Mackey further argues, however, that the admission of this testimony rendered his trial fundamentally unfair, regardless of Ohio evidentiary law. *See, e.g.*, *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Doan v. Brigano*, 237 F.3d 722, 736 (6th Cir. 2001) (holding that a state court ruling that was proper under state evidentiary rules nonetheless violated due process by rendering a trial unfair), *abrogated on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). While it may be true that the evidence at issue should not have been used directly against Mackey, his counsel did not request a limiting instruction on this issue. It is a well-settled proposition of law in Ohio that "it is not error for the court to admit evidence which may be admissible for one purpose and inadmissible for another when the objection to the evidence is general." 42 Ohio Jur. 3d 392, Evidence and Witnesses § 165 (2003); *see also State v. Collins*, 585 N.E.2d 532, 537 (Ohio Ct. App. 1990); *Agler v. Schine Theatrical Co.*, 17 N.E.2d 118, 119 (Ohio Ct. App. 1936). Further, the court's failure to give a limiting instruction in such a circumstance is also not error in the absence of a specific request for such an instruction. *See, e.g.*, 42 Ohio Jur. 3d 392, Evidence and Witnesses § 165 (2003) ("[T]he trial court's failure to give an instruction limiting the scope of evidence admissible for one purpose but inadmissible for others is not a ground for reversal when no such

instruction was requested."); *see also* Ohio R. Evid. 105, staff note (1980) (stating same and citing

the relevant section in Ohio Jur.); *State v. King*, No. 88AP-665, 1998 WL 83577 (Ohio Ct. App. Jul.

18, 1989) (unpublished decision). Since the testimony at issue here was indeed admissible for the

purposes of impeaching Whitmore, the lack of an instruction or other admonishment to the jury as

to its use against Mackey cannot be reversible error, since no such instruction was requested. And

to the extent that Mackey's claim on this point is just that this evidence was more prejudicial than

probative, we are not "firmly convinced" that the decision to allow this evidence for the purpose of

impeaching Whitmore was an abuse of discretion. *See, e.g.*, *Pressman v. Franklin Nat'l Bank*, 384

F.3d 182, 187 (6th Cir. 2004); *Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979) (holding that

such matters are best left to the sound discretion of the trial court).

We thus find no error warranting habeas relief in the evidentiary decisions of the state courts.

## B. Use of Mackey's Post-Arrest Silence

Next, Mackey claims that the prosecution's repeated references to Mackey's post-arrest

silence during cross-examination and closing argument violated his due process rights. Explaining

that the *Miranda* warning of a right to remain silent implied that such silence would not be used

against a defendant, the Supreme Court in *Doyle v. Ohio,* 426 U.S. 610, 619 (1976), held that

prosecutors may not refer, for impeachment purposes, to a defendant's post-*Miranda* silence. While

*Doyle* does not apply to the use of such silence as to prior inconsistent statements, *see Anderson v.*

*Charles*, 447 U.S. 404, 408 (1980), no such use was made in Mackey's case, nor is any alleged by

the State. Outside of this exception, no court has found any other valid reason for allowing the

government to use a defendant's silence to impeach him. However, once having found a *Doyle*

violation, we may not order a retrial (or grant a writ of habeas corpus) without a determination that the violation substantially affected the outcome of the trial. *See, e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that, to require reversal, the error must have had a "substantial and injurious effect or influence in determining the jury's verdict."). In criminal cases, where "beyond a reasonable doubt" is the standard for conviction, however, "if one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

Mackey contends that, under *Doyle*, the prosecution's repetitive discussion of the fact that he did not mention his defense of self-defense between the time of his arrest and the time of his trial was both improper and a violation of his right to due process under the Fourteenth Amendment. During the prosecution's cross-examination of Mackey, just after Mackey testified that his lawyer told him not to say anything to the police when turning himself in, the following exchange occurred:

> Q: And you have never given your side of the story since April 14th or 15th, until today in court, September 15th, 1998?
>
> A: Is it the 15th?
>
> Q: So five months have gone by since these events occurred, is that fair to say?
>
> A: Yes, sir.
>
> Q: And that five months is the first time you have given your version of what happened in front of the Office Lounge, right?
>
> A: I beg your pardon.
>
> Q: This is the first time you have given your version as to what happened in the Office Lounge to any type of authority?

A: [Y]es, this is the first time.

Q: And you maintained, though, that from the day it happened, it was strictly self-defense, correct?

A: Yes, sir.

Later, in closing, the prosecution made the following statement:

[Mackey] claims that David Smith went for his gun. He's the defendant in this case. He's charged with a crime. So I anticipate that's what his testimony is going to be, *although it took five months for him to so indicate*.

(emphasis added). Several minutes later, the prosecutor added:

There's no voluntariness here. We hear his version. He was arrested April 15th. The first time any official version of what happened was when Maurice Mackey took the witness stand and gave his accounts of some five months later. *I find it a little peculiar, you are alleging self-defense, it takes you five months to so indicate.*

(emphasis added). No objection was made to any of these statements by trial counsel, nor did the trial judge instruct the jury in any way as to these statements. There can be little question that such direct references to Mackey's post-*Miranda* silence are clear violations of the standard elucidated in *Doyle*. *See, e.g.*, *Gravley v. Mills*, 87 F.3d 779, 787–88 (6th Cir. 1996) (citing similar references as *Doyle* violations).

However, it does not appear that the *Doyle* error, considered alone, significantly affected the outcome of Mackey's case. True, Mackey's case involves significantly less evidence, and a significantly more believable defense, than did the case in *Gravley*, where a panel of this Court found that *Doyle* error required retrial. *Id*. One would expect verdicts in closer cases (such as Mackey's) to be more easily affected by *Doyle* errors. However, in his closing, Luskin, despite not

objecting to the prosecution's mention of Mackey's silence, significantly diminished the chance that

the jury used the prosecution's repeated mentions of Mackey's silence against Mackey:

> If an individual, whoever that individual is, you, I, Mr. Kellon, Judge McGinty, anyone has an inalienable right, a constitutional right to talk to their attorney. Ladies and gentlemen, no individual can disparage an individual because they wanted to talk to their attorney before they talk to the government. And if that attorney says to them, "He does not wish to make any type of statement," be it self-incriminating or not, ladies and gentlemen, it's the Fifth Amendment to the Constitution of the United States of America.
>
> And Mr. Rubin advised his client, Maurice Mackey, "Maurice does not want to make a statement," and that is a right that Mr. Mackey exercised on the advice of his counsel.
>
> So [if] it took five months to hear Maurice Mackey's story, then you blame it on Irl Rubin and blame it on John Luskin, because that's what we advised him to do.

It is, of course, not inconceivable that a juror could have disbelieved this statement, but the

right to an attorney and the right to remain silent are commonly known to society at large. Given

both the common popular knowledge of the right to remain silent and to the advice of an attorney,

and given Mackey's counsel's statement on closing that substantially mitigated the adverse effects

of the *Doyle* violation, we can say with fair assurances that the judgment was not substantially

swayed by the *Doyle* error in this case, when considering that error by itself. Therefore, the state

courts' determination that the prosecution's *Doyle* references, when considered alone, do not rise

to the level required to issue a writ of habeas corpus was not unreasonable.

**C. Ineffective Assistance of Counsel**

In order to establish a violation of the Sixth Amendment right to counsel, a defendant must show that the attorney's performance was deficient, "meaning that counsel made errors so serious that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir. 2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under the familiar *Strickland* standard, this involves a two-step process. First, we must judge the reasonableness of counsel's challenged conduct, determining whether the acts or omissions identified by a defendant are outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. During this step, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*.

If any alleged errors of counsel are found to be constitutionally deficient performances, a defendant must still prove that the deficiency resulted in significant prejudice to the defense. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome," though a defendant need not prove by a preponderance of the evidence that the result would have been different. *Id*. at 694. Further, in determining whether prejudice has resulted from counsel's errors, a court "must consider the totality of the evidence before the jury. . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id*. at 695. In making this determination as to prejudice, we examine the combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case.

*See, e.g.*, *Blackburn v. Foltz*, 828 F.2d 1177, 1186 (6th Cir. 1987). With these standards in mind, we turn to Mackey's allegations of trial counsel ineffectiveness.

First, Mackey contends that Luskin's decision to call Whitmore, Mackey's girlfriend, as a witness constituted ineffective assistance because her testimony allowed the prosecution to introduce damaging evidence, including Mackey's past threats to Whitmore's former employer, that would not otherwise have been presented to the jury. Mackey likens this to a case where a defendant's trial counsel had failed to investigate adequately the testimony of his only expert witness, whose testimony turned out to be fundamentally opposed to the defense's sole defense. *See Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000) (finding ineffective assistance in such a case).

Here, however, the decision to call Whitmore as a witness on direct examination, whatever the consequences, was not constitutionally unreasonable. Since Whitmore was one of only two surviving witnesses to the shooting, and since she was the object of Smith's comment in the lounge, Luskin could reasonably have used her testimony to provide additional context to Mackey's testimony or his self-defense theory. In particular, Whitmore described Smith as having spoken first outside the bar, whereas Wright, the only other witness to the shooting, said Mackey spoke first. This alone was sufficient reason to call Whitmore as a witness. It is not inconceivable that Luskin was worried about what would have happened if the prosecution had called Whitmore as a witness or that, perhaps, Luskin believed Whitmore's testimony would show that Mackey cared about Whitmore's well-being and was thus a caring man. Regardless of Luskin's actual reasoning, the existence of so many reasonable trial strategies for calling Whitmore, in conjunction with the

presumption that counsel acted constitutionally, renders this decision constitutionally sound. *See, e.g.*, *Miller v. Francis*, 269 F.3d 609, 615-16 (6th Cir. 2001).

Next, Mackey argues Luskin was deficient in failing to request a limiting instruction as to certain testimony, regarding Mackey's prior bad acts, that was supposed to have been used only to impeach Whitmore. The evidence at issue consisted of Whitmore's testimony on cross-examination regarding previous times Mackey had encouraged her to lie to protect him and previous occasions on which Mackey had been violent both towards Whitmore and towards men who had shown an interest in her. The record does not contain any requests by counsel for such an instruction, but the record does reflect that Luskin did object to the prosecution's cross-examination of Whitmore on these subjects, asking for it to be "limited," though it is not clear whether this request was to limit the scope of the cross-examination or to issue a limiting instruction to the jury. The trial judge allowed the cross-examination to continue, explicitly stating that he was admitting the evidence only under Ohio R. Evid. 404(A)(3). The trial judge did not issue any limiting instruction, though he did warn the parties that he would rule on the scope of the examination on a "case by case, question by question basis." While Luskin did object occasionally during the rest of Whitmore's cross-examination, he did not raise the issue of a limiting instruction at any other time before the end of the trial.

At Mackey's habeas hearing in the district court, the magistrate judge, whose findings the district court adopted, concluded that since this evidence was admitted, and since Luskin had objected to its admission, there was no prejudice resulting from counsel's failure to request a limiting instruction. As a result, the district court did not determine whether or not this failure

constituted error. This decision might have been appropriate had the failure to request a limiting

instruction been the only error Mackey alleges. *See, e.g.*, *Strickland*, 466 U.S. at 697 ("If it is easier

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course

should be followed."). But the *Strickland* test requires that prejudice be evaluated in light of the

cumulative effect of all constitutionally infirm actions by counsel. *See, e.g.*, *Strickland*, 466 U.S.

at 690 (requiring consideration of counsel's actions "in light of all of the circumstances"); *id*. at 695

(noting that the question to be answered in cases such as this is whether, "absent the *errors*, the

factfinder would have had a reasonable doubt respecting guilt"(emphasis added)).

> Taking the unaffected findings as a given, and taking due account of the effect of the
> errors on the remaining findings, a court making the prejudice inquiry must ask if the
> defendant has met the burden of showing that the decision reached would reasonably
> likely have been different absent the errors.

*Id*. at 696; *cf. Kyles v. Whitley*, 514 U.S. 419, 434, 436 (1995) (considering cumulative effect of

errors in another context in which the *Strickland* standard for prejudice (though not the *Strickland*

test for ineffective assistance) had been applied). As a result, and since we find other such errors

below, we must determine whether Luskin's failure to request a limiting instruction was in fact

constitutional error before we reach the issue of prejudice.

Both the Ohio courts and this Circuit have previously held that the failure to request a

limiting instruction with regard to some important piece of evidence can constitute constitutionally

ineffective assistance of counsel if the failure falls outside of an objective standard of professionally

reasonable conduct. *See, e.g.*, *White v. McAninch*, 235 F.3d 988, 998 (6th Cir. 2000); *State v.

Lascola*, 61 Ohio App. 3d 228, 238-39 (Ohio Ct. App. 1988). Thus, we must determine whether a

decision not to request an instruction limiting the jury's use of this testimony to determining Whitmore's credibility was professionally unreasonable.

The State argues that this decision was not unreasonable because Luskin would never have been granted a limiting instruction, since the state appellate court found that the evidence was properly admitted under Ohio R. Evid. 404(B). While it is true that counsel cannot be held ineffective for failing to object to evidence that was properly admitted, *see, e.g.*, *United States v. Neeley*, 189 F.3d 670, 684 (7th Cir. 1999), this was not the case here. The state appellate court, acting on an abuse of discretion standard, under the incorrect presumption that the evidence had in fact been admitted directly against Mackey under Ohio R. Evid. 404(B), found that the evidence was properly introduced against Mackey, and thus that no prejudice had resulted from the lack of a limiting instruction. But that court's incorrect assumption as to the grounds on which the evidence was admitted vitiates its entire decision on this point. The evidence was not admitted under Ohio R. Evid. 404(B), the State did not attempt to admit it on such grounds at trial, and the defense never had an opportunity to object or appeal on these grounds, since Rule 404(B) had never even been mentioned (directly or by inference) at trial. It is possible that the trial judge would have denied a motion to admit this evidence on 404(B) grounds; indeed, he explicitly limited the grounds on which he was admitting it to uses under Rule 404(A)(3). J.A. 251-52, 322-23. *Cf. United States v. DeGeratto*, 876 F.2d 576, 584 (7th Cir. 1989) (noting that the use of prior bad acts evidence for the purposes of attacking the character of a witness "is limited by the rule, and is to be considered by the jury only for certain purposes. A limiting instruction should ordinarily and routinely be given

at the time the evidence is admitted, and again at the close of the case."). As a result, Luskin might very well have been successful had he requested a limiting instruction.

In addition, there is no reasonable trial strategy to support Luskin's failure to request such an instruction here. While it is true that an attorney may frequently choose to forego a limiting instruction as to prior bad acts to avoid focusing the jury's attention any further on the acts, here the jury's attention was already highly focused on the acts at issue. The prosecution's cross-examination of Whitmore with regard to prior bad acts takes up over sixteen pages of transcript (not including the 50 pages of voir dire testimony on these points, or the fact that the jury already knew Luskin had objected to the evidence's admission) covering at least three different incidents. No reasonable attorney, especially in a case this close, could possibly have believed he would be further focusing the jury's attention on this testimony by requesting a limiting instruction. Further, the evidence at issue clearly was significant to Mackey's case; the prosecution's theory of the shooting was that it did not result from self-defense, but instead from Mackey being upset at Smith for harassing his girlfriend. Thus, evidence that he had previously harmed those harassing his girlfriend could obviously have influenced the jury as to whether or not Mackey shot first, the only fact at issue in the case. Luskin should have been aware of this; any professionally competent lawyer would have done what he could to limit the admission and then use of such testimony. As a result, Luskin was ineffective in not doing so.

The vast majority of courts hearing ineffective assistance claims based on failure to request a limiting instruction have determined that no prejudice resulted from counsel's failures. *See, e.g.*, *Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001). However, as noted above, any prejudice resulting

- 17 -

from this error must be considered in combination with other errors, if any. *See, e.g.*, *Strickland*, 466 U.S. at 695-96. Therefore, we discuss prejudice below only after considering each of Mackey's additional allegations of counsel's ineffectiveness.

Mackey next asserts that Luskin ought to have objected to the introduction of evidence that he maintained an "arsenal" of guns at his home. While Luskin did object to the prosecutor's statement that Mackey was someone who enjoyed "getting out his AK-47 and blowing the shit out of the woods," Luskin did not object to the prosecution's lengthy inquiries into the capabilities of each of the four weapons (other than the murder weapon) found in Mackey's house, nor did he object to the prosecutor's statement on closing that Mackey could have "conducted a little mini-war" with the police at his house using the many guns found there. The state appellate court found that these two oversights were constitutionally infirm, but concluded that no prejudice resulted from either. *State v. Mackey*, No. 75300, 1999 WL 1129589, at 13-15 (Ohio Ct. App. Dec. 9, 1999). We agree that no appropriate trial strategy would warrant a defense attorney's standing by idly while such evidence was introduced, and that the lack of an objection as to this evidence was sufficient error to meet the first prong of the *Strickland* test. In contrast to the state appellate court's opinion, however, and in accord with the clear precedent of *Strickland*, we will evaluate the cumulative effect of all of Luskin's errors below instead of considering each individually. *See, e.g.*, *Strickland*, 466 U.S. at 695-96.

Mackey further claims that Luskin should have objected to the prosecution's introduction of Whitmore's extrajudicial acts and statements that were used to prove "guilt by association." First he complains about Whitmore's friend's testimony regarding a statement Whitmore made during

her phone call to the lounge after the shooting ("He pulled a gun out on me too."). But the record reflects that Luskin did object to the use of the statement, at least with regard to its link to Mackey. In addition, this statement was arguably being properly used to show Whitmore's state of mind at the time of the telephone call. It thus did not constitute objectionable error. Mackey also claims Luskin should have objected to testimony that Whitmore attempted to harass witnesses prior to trial. As for the "harassment," the only relevant testimony on point related to several phone calls and an "unfriendly, irritating" conversation where Whitmore "made references" to the testimony the witness was going to give. This, without any details of a specific request regarding testimony, does not rise to the level of witness harassment or other improper actions whose mention to a jury would be objectionable. Hence, there was no error in Luskin's failure to object to the evidence about which Mackey complains here.

Mackey also claims Luskin should have objected to the prosecution's closing argument that Smith was "legally permitted to carry his service handgun into the bar." The state appellate court found that Luskin could have objected here, but that it was instead reasonable trial strategy not to object at that moment, since objections can disrupt the flow of a closing statement and are often considered technical and bothersome by a jury. The state court noted that an attorney might reasonably think it would be more appropriate to counter such claims in the defense closing. This Luskin did, noting to the jury that there was "absolutely no evidence" Smith was permitted to carry a firearm into the bar and that the prosecution had "failed" in its attempt to prove otherwise. As noted above, we are not permitted to second-guess reasonable trial strategies, and this is undoubtedly one such strategy. Also, even were this not a reasonable trial strategy, it is unlikely that this highly

collateral issue would have had any effect, cumulative or otherwise, on the jury's decision as to who shot first. The lack of an objection as to this statement was therefore not error under the first prong of *Strickland,* nor could it have any effect on our evaluation of the second prong.

Finally, Mackey argues that his lawyer erred in not objecting to the prosecution's repeated references to Mackey's post-arrest silence. It is indisputable that such references violate the standard in *Doyle*. In addition, the repetitive nature of these statements, occurring during cross-examination of the defendant as well as closing argument, make them less susceptible to being cured in the defendant's closing. There is no reason why an attorney would not want to object to such questions during the cross-examination of a defendant. The district court merely noted that Luskin addressed these issues on closing, but did not determine whether or not failure to object to the prosecution's reference to Mackey's silence during both cross-examination and closing argument was error.

In addition, the state appellate court ignored this issue in its first opinion (though it had properly been raised) and, in its second opinion, merely resolved the issue by saying no prejudice had resulted. *State v. Mackey*, No. 75300, 1999 WL 1129589, at *11-12 (Ohio Ct. App. Dec. 9, 1999). We find that Luskin's failure to object to the obvious *Doyle* violations was an error. No reasonable trial strategy could have Luskin sit by idly on cross-examination while the defendant testified repeatedly that he had not come forth with his story for five months after being arrested, especially when the way the jury viewed Mackey's testimony was so central to determination of the only fact at issue in the case. This was clear error, under the first prong of *Strickland*. We thus move to determining if the cumulative errors of Mackey's counsel were prejudicial to his case.

- 20 -

We cannot grant a writ of habeas corpus on an ineffective assistance of counsel claim without a finding that the state appellate court's application of this *Strickland* standard was "contrary to, or involved an unreasonable application of, clearly established law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(b); *see also Williams v. Taylor*, 529 U.S. 362 (2000). In considering whether or not a state court has acted contrary to clearly established Supreme Court law, we look only to the holdings of the Supreme Court, and not to the dicta. *Williams*, 529 U.S. at 405-07. In contrast, a state court can be said to have unreasonably applied Supreme Court law "if the state court identifies the correct governing principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. Here, the clear mandate of *Strickland* and several other Supreme Court cases is that the effect of all of counsel's errors is to be considered in toto, against the backdrop of the totality of the evidence in the case. *See, e.g.*, *Strickland*, 466 U.S. at 690, 695-96; *Williams*, 529 U.S. at 395-96, 398-99 (considering cumulatively multiple errors of counsel in finding prejudice in light of the "entire . . . record, viewed as a whole"); *Kyles*, 514 U.S. at 434, 436. In the instant case, the state appellate court, while finding several errors in Luskin's actions, considered the prejudicial effect of each alone. Since it did not consider the cumulative effect of these errors upon the jury's verdict, its decision was not merely in error, but was contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 395-96, 398-99. As a result, if the cumulative effect of these errors resulted in prejudice to Mackey, he is entitled to the writ, notwithstanding the decisions of the state courts in this case.

As noted above, Luskin was ineffective by not requesting a limiting instruction as to Mackey's prior bad acts, by not objecting to the lengthy testimony as to the number of guns in

Mackey's house and their capabilities, and by not objecting to the prosecution's mention of Mackey's post-arrest silence. Therefore, we must determine if there is "a reasonable probability that, but for [these three] errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As always, we note that a defendant is entitled to a "fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984). In the vast majority of cases, where there is significant evidence supporting the conviction, the type of errors at issue here would be unlikely to affect the jury's verdict. Here, however, the paucity of evidence against Mackey was striking. The only issue in the case was who drew his weapon first, Mackey or Smith. There were no witnesses who had a line of sight that would have allowed them to answer this question. There was no forensic evidence to indicate who drew first, other than Smith's intoxication. Mackey and Whitmore did flee from the scene, but each testified they did so because they were scared. The only evidence the jury could use to answer the "who drew first" question was thus Mackey's testimony that he shot in self-defense. The jury had to make a decision: either Mackey was credible, and thus innocent, or he was not believable, and thus guilty.

However, prior to Mackey's testimony, Luskin's errors led to the jury being improperly informed that Mackey was a gun-loving man who maintained an "arsenal" of deadly weapons at home, who had previously been violent towards those who had harassed or expressed an interest in his girlfriend, and who was silent as to his explanation for why he shot a police officer for five months prior to trial before suddenly claiming self-defense. This easily could have affected their determination as to Mackey's credibility. *See, e.g.*, *Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than

- 22 -

one with overwhelming record support."); *United States v. Rapanos*, 115 F.3d 367, 371 (6th Cir.

1997) ("It is the opinion of the Court, after viewing the entirety of the trial, that a reasonable jury

could have rendered either verdict. . . . In such a situation, an unchecked prejudicial comment may

indeed have tipped the scales in favor of conviction."). Luskin's closing statement might have

remedied some of the effect of the *Doyle* violations. However, by then, the cumulative damage the

three errors could have inflicted upon the jury's determination as to Mackey's credibility was severe.

Since this credibility determination was so central to the outcome of this case, given the lack of any

physical or testimonial evidence (other than Mackey's) regarding who drew first, the effects of

Luskin's errors were magnified. We thus find that the impact of counsel's ineffectiveness was

sufficient to cast doubt on the jury's decision as to Mackey's credibility, and thus to the trial's

eventual outcome.[1]

It should be noted that cases such as this one, where there are no witnesses and no physical

evidence that would cast any light upon the central question in the case, are rare. The vast majority

of the time, errors such as those made here by Luskin would be insufficient to vacate a verdict on

direct appeal, never mind via a writ of habeas corpus. But where a case is as close as Mackey's was,

with so little evidence, the teaching of *Strickland*, that counsel's effectiveness must be evaluated in

---

[1]The dissent references Mackey's flight and pre-arrest silence as more evidence that he, rather than Smith, shot first. But both of these factors depend directly upon the jury's view of Mackey's testimony that he and Whitmore fled from the scene and avoided the police for several hours because they were scared. Had the jury believed this explanation, these factors would not have weighed against Mackey. As we have noted, this entire case rests on a determination of Mackey's credibility. But because his attorney's errors significantly undermined this credibility, we disagree with the dissent that these factors render Mackey's attorney's errors non-prejudicial.

light of the "totality of the evidence," means that we, along with state appellate courts, must scrutinize more closely than usual the cumulative effects of errors such as those made here. This scrutiny today leads us to find that Luskin's errors sufficiently prejudiced Mackey's case such that a new trial is warranted.

## III.

For the preceding reasons, we **REVERSE** the judgment of the district court and **REMAND** Mackey's case with instructions to issue a conditional writ of habeas corpus, giving the State of Ohio 180 days within which to retry Mackey or release him from state custody.

**JULIA SMITH GIBBONS, Circuit Judge, dissenting.** I agree with the majority's resolution of the issues discussed in Parts II.A and B of the majority opinion. And while I agree with the majority that Maurice Mackey's attorney was deficient when he failed to request a limiting instruction with respect to Stephanie Whitmore's testimony about Mackey's prior bad acts, failed to object to prejudicial testimony about Mackey's gun ownership, and failed to object to statements about Mackey's post-arrest silence, I do not believe that Mackey was prejudiced by the cumulative effect of his attorney's errors. I therefore dissent.

To succeed on an ineffective assistance of counsel claim, a defendant must show that his counsel's performance was deficient and that it prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance was deficient if it was objectively unreasonable under the circumstances. *Id.* at 688. It was prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. For the purpose of ineffective assistance claims, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In order to grant a habeas petition, the state court's application of *Strickland* must be objectively unreasonable or contrary to clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d).

The majority concludes that the state court's decision was contrary to clearly established Supreme Court law because the state court did not consider the prejudicial impact of counsel's errors as a group but rather evaluated prejudice with respect to each of the errors alone. *Strickland*'s exact language requires the defendant to show that, "but for counsel's unprofessional *errors*, the result of the proceeding would have been different." 466 U.S. at 694 (emphasis added). While *Strickland*

does speak in terms of the prejudicial impact of the "errors," it does not explicitly state that the prejudice analysis should be conducted in light of the errors considered as a group. Because AEDPA requires that Supreme Court law be "clearly established," it is not entirely obvious that the state court acted in an objectively unreasonable way by not deducing from *Strickland* the purported requirement that an attorney's errors should be combined to consider whether a defendant was prejudiced.

I also do not believe that Mackey has established that "there is a reasonable probability that . . . the result of the proceeding would have been different" absent his attorney's mistakes. *Id.* While there was not an overwhelming amount of evidence available in this case, there was enough evidence presented that was unaffected by counsel's errors for the jury to properly evaluate Mackey's self-defense claim. For example, several people testified as to the events that occurred that night outside of the Office Lounge. Mackey testified at trial that the victim Smith pulled his gun first. Whitmore, Mackey's girlfriend, testified that she saw the victim Smith pull a gun and point it at her stomach. She also testified that she could not see Mackey at this time, but heard him fire two shots. Evidence was also presented that Smith died clutching his gun in his hand. Finally, as noted in the Ohio appellate court opinion, both Smith and Wright were shot by Mackey. The bullet hit Wright as he was running away from the scene and trying to reenter the Office Lounge; the jury could have found this fact inconsistent with Mackey's claim that he was defending himself against Smith.

In addition, Mackey's behavior after the shooting was inconsistent with his theory of self-defense. Mackey and his girlfriend fled the scene and drove home. When the police arrived at the

home in the early morning hours after the shooting, neither answered the door. They did not surrender to the police until several hours after they knew that the police were looking for them. With these undisputed facts before it, the jury could have discounted Mackey's claim of self-defense claim as incompatible with his actions after the shooting. *See Long v. Smith*, 663 F.2d 18, 22 (6th Cir. 1981) ("Ordinarily, a person who commits an act in self-defense does not flee from the law after committing his act."); *State v. Taylor*, 676 N.E.2d 82, 94 (Ohio 1997) (quoting *State v. Eaton*, 249 N.E.2d 897, 898 (Ohio 1969)) ("Flight from justice . . . may be indicative of a consciousness of guilt.").

Mackey's flight from the police also allowed the prosecution the opportunity to permissibly refer to his post-shooting, pre-arrest silence. *See Jenkins v. Anderson*, 447 U.S. 231, 240 (1980) ("We hold that impeachment by use of prearrest silence does not violate the Fourteenth Amendment."); *see also State v. Sabbah*, 468 N.E.2d 718, 719 (Ohio Ct. App. 1982) ("[W]here there has been a substantial period of pre-arrest silence, then impeachment by reference to such silence is permissible . . . ."). While the prosecution's comments about Mackey's failure to tell the police after his arrest that he acted in self-defense were likely improper under *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the prosecution's references to his pre-arrest silence were proper and allowed the jury to consider his self-defense claim in the context of his failure to talk to the police right after the incident at the Office Lounge.

In my view, there was enough evidence before the jury that was not tainted by counsel's errors for the jury to decide that Mackey did not act in self-defense and was guilty of murder and attempted murder. While *Strickland* counsels that "a verdict or conclusion only weakly supported

by the record is more likely to have been affected by errors than one with overwhelming record support," 466 U.S. at 696, this was not such a weakly supported case such that there is a reasonable probability that counsel's errors tipped the balance between a guilty and a not guilty verdict. Rather, the evidence that Mackey shot two people, shot Wright as he was turning to run back into the Office Lounge, fled the scene, and refused to talk to the police after they arrived at his home strongly suggests that his self-defense claim was not credible.

Given this evidence, I do not believe that Mackey has established that "there is a reasonable probability that . . . the result of the proceeding would have been different" absent his attorney's mistakes. *Id.* at 694. For this reason, I would affirm the district court's decision denying Mackey's petition for a writ of habeas corpus.